United States District Court
Southern District of Texas

**ENTERED**

April 16, 2026

Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | |
|---|---|
| L.Y.,[1] § | |
| § | |
| Plaintiff. § | |
| § | |
| V. § | CIVIL ACTION NO. 3:26-cv-00112 |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY, § | |
| § | |
| Defendant. § | |

### OPINION AND ORDER

Plaintiff L.Y. seeks judicial review of an administrative decision denying her application for disability and disability insurance benefits under Title II of the Social Security Act (the "Act"). L.Y. and Defendant Frank J. Bisignano, the Commissioner of the Social Security Administration (the "Commissioner"),[2] have briefed their positions. *See* Dkts. 8, 10, 11. After reviewing the briefing, the record, and the applicable law, I affirm the Commissioner's decision.

### BACKGROUND

On July 26, 2021, L.Y. filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning June 9, 2021. Her application was denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a hearing. Following the hearing, the ALJ

---

[1] On May 1, 2023, the Committee on Court Administration and Case Management of the Judicial Conference of the United States issued a memorandum recommending that courts adopt a local practice of using only the first name and last initial of any non-government party in Social Security opinions. This court has taken that guidance a step further in the interest of claimant's privacy and will use only initials in public opinions.

[2] Bisignano became the Commissioner of Social Security on May 7, 2025. Bisignano is "automatically substituted" as the defendant in this suit. Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

issued a written decision finding that L.Y. was not disabled. L.Y. filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to "(1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole." *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quotation omitted). The Commissioner uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment;

(4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See Salmond*, 892 F.3d at 817. Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's maximum capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

**THE ALJ'S DECISION**

The ALJ found at Step 1 that L.Y. "has not engaged in substantial gainful activity since June 9, 2021, the alleged onset date." Dkt. 5-3 at 43.

The ALJ found at Step 2 that, L.Y. "has the following severe impairments: degenerative disc disease (DDD) of the lumbar and cervical spine, anxiety disorder/depressive disorder/bipolar disorder, and gout in right leg." *Id.* at 44.

The ALJ found at Step 3 that L.Y. "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." *Id.*

Prior to consideration of Step 4, the ALJ determined L.Y.'s RFC as follows:

[L.Y.] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except the individual can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to unprotected heights, and wet slippery, or uneven surfaces. The claimant can frequently reach in all directions, including overhead, bilaterally. She can frequently handle, and finger bilaterally. The claimant can occasionally push, pull, and operate foot controls bilaterally. She can perform the tasks assigned, but not at a production rate pace; however, she can meet the end of day work goals.

3

*Id.* at 46.

At Step 4, the ALJ found that L.Y. "is capable of performing past relevant work as an accounts payable clerk, a dispatcher, and a front desk clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." *Id.* at 52.

Accordingly, the ALJ found that L.Y. "has not been under a disability, as defined in the Social Security Act, from June 9, 2021, through the date of [the ALJ's] decision." *Id.* at 54.

## DISCUSSION

This appeal presents only one issue for my consideration: whether the ALJ's Step 3 determination is supported by substantial evidence because the evidence shows that L.Y. fails to satisfy all the criteria for Listing 1.15.

"At step three, the ALJ considers whether the claimant's impairment meets or equals one of the listed impairments set forth in Appendix 1 of the regulations, *see* 20 C.F.R. pt. 404, subpt. P, app. 1, *Listing of Impairments* ('Listings')." *Jones v. O'Malley*, 107 F.4th 489, 493 (5th Cir. 2024). "The listed impairments are physical and mental impairments that are considered disabling regardless of the claimant's age, education, or work experience." *Id.* "[I]f a claimant has one of the listed impairments, and satisfies the requisite criteria of severity, the claimant is disabled, and the sequential evaluation ends at step three." *Id.*

"Listing 1.15 addresses disorders of the skeletal spine resulting in compromise of a nerve root(s)." *Id.* n.4. Listing 1.15 has four subparts—A, B, C, and D. A claimant must satisfy all four subparts to be considered disabled. At issue here is subpart D, which requires, in relevant part:

> D. Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following:
>
> 1. A documented medical need (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)).

4

Listings § 1.15.

Although the regulations "do not require that [a claimant] have a specific prescription for the assistive device," they do require "evidence from a medical source that supports [the claimant's] need for an assistive device . . . for a continuous period of at least 12 months." *Id.* § 1.00C6a. In finding that L.Y. did not satisfy subpart D, the ALJ observed "that the use of an assistive device seems not to be medically necessary. Although the use of a walker was referenced in one [doctor's note], there appears to be no documented need for an assistive device in the medical evidence of record." Dkt. 5-3 at 47.

L.Y. challenges the ALJ's conclusion, arguing that the following evidence satisfies subpart D:

- Tr. 466- Manish Rungta, M.D. 06/28/2021[3] – Using a walker now . . . poor balance- knees and ankles are not good.
- Tr. 474 Dr. Daniel 05/28/2022: Claimant's gait was slow with a walker with problems standing from a sitting positions.
- Tr. 474 Dr. Daniel 05/28/2022: Claimant uses a walker and at one time was using a cane until her condition did worsen.
- R. 474- Dr. Daniel 05/22/2022:[4] Claimant could not walk on toes and heels, nor squat, with noted support of the examination table.

Dkt. 11 at 8–9. I disagree that this evidence establishes that L.Y. had a medical need for a walker for a continuous 12-month period.

Dr. Rungta's note in June 2021 that L.Y. was "using a walker now," had "poor balance," and her "knees and ankles are not good" are simply recorded statements from L.Y. listing her history of present illnesses. Dkt. 5-8 at 104. The regulations state that the Commissioner "will not accept a report of your statements about your symptoms and limitations in place of the medical source's report of objective clinical findings." Listings § 1.00C6a. Such records are not "objective clinical findings." *Id.* Moreover, "mere observations of walker use do not render the

---

[3] L.Y. surely means to refer to a June 24, 2021 encounter with Dr. Rungta, as that is the date of the visit reflected on page 466 of the transcript. *See* Dkt. 5-8 at 101–04.

[4] L.Y. surely means to refer to the May 28, 2022 report of consultative medical examiner Dr. Daryl K. Daniel, as there is no May 22, 2022 report in the record.

assistance 'medically necessary.'" *Breoade V. v. Comm'r, Soc. Sec. Admin.*, No. 3:25-cv-254, 2026 WL 673837, at *5 (N.D. Tex. Mar. 6, 2026). Dr. Rungta "simply observed [L.Y.]'s walker use without commenting on its medical necessity." *Id.* That is not enough.

Likewise, Dr. Daniel's report about L.Y.'s use of a walker simply captured what L.Y. told him and what Dr. Daniel observed during his examination of L.Y. *See* Dkt. 5-8 at 110–12. Nowhere in his report does Dr. Daniel "describe . . . the circumstances for which [L.Y.] need[s] to use the assistive device." Listings § 1.00C6a. Even if Dr. Daniel had described such circumstances, his report is just one snapshot in time. More evidence would be required to substantiate that L.Y. had a medical need for a walker for a continuous 12-month period. L.Y. has not pointed me to any such evidence. "It is [L.Y.'s] burden to establish that [her] impairments medically equal a listed impairment, and [s]he has not done so. Thus, substantial evidence supports the ALJ's conclusion that [L.Y.'s] impairments do not meet or equal Listing 1.15." *Jones*, 107 F.4th at 498.

## CONCLUSION

For the reasons discussed above, I affirm the Commissioner's decision.

I will issue a final judgment separately.

SIGNED this ___16th___ day of April 2026.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE